UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| TREVOR HOUSTON CAYCE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:11-00046 |
| | ) | Judge Sharp |
| ENOCH R. GEORGE, *et al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM

This case involves Plaintiff's alleged treatment while housed as an offender at the Maury County Jail. One week after the case was filed, Plaintiff filed a "Motion to Place the Plaintiff in a Jail Where Plaintiff can Work" (Docket No. 4) in which he requested the Court "remove the Plaintiff from the Maury County Jail and place him in a jail of the United States District Judge's Choice." (Docket No. 4 at 5). Leaving aside that "[t]here is no constitutional right to a work assignment" for prisoners, Walker v. Gomez, 101 Fed. Appx. 200, 203 (9th Cir. 2004) (collecting cases), Defendants have filed the declaration of Debra Wagonschutz ("Wagonschutz"), the Maury County Jail Administrator, wherein she states that Plaintiff has been working outside the jail since October 11, 2011, and, in fact, was released from jail on December 13, 2011. (Docket Nos. 23 at 2 & 25-1 at 1). Plaintiff does not contest those assertions, and, therefore, Plaintiff's Motion will be denied as moot.

With respect to the remaining claims in Plaintiff's Complaint, Defendants have filed a Motion for Summary Judgment, with accompanying Memorandum and a Concise Statement of Facts supported by the evidentiary record. (Docket Nos. 16, 17 & 20). Plaintiff has not responded to this

1

Motion. Instead, Plaintiff has filed a Memorandum in support of his non-existent Motion for Summary Judgment, along with what has been docketed as a "Concise Statement of Facts by Trevor Houston Cayce." (Docket Nos. 21 & 21-1). Plaintiff's purported Concise Statement of Facts is in actuality a response to the statement of facts proffered by Defendants.

Even recognized as such, Plaintiff's statement is wholly deficient and in contravention of this Court's Local Rules which require that "[e]ach disputed fact must be supported by specific citation to the record." L.R. 56.01(c). Plaintiff's response to Defendant's Concise Statement of Fact contains absolutely no citation to the record, and Plaintiff's Memorandum in support of his non-existent Motion for Summary Judgment also contains no citation to the record.[1]

Effectively, Defendant's Motion for Summary Judgment is unopposed, meaning that the Court can accept Defendants' version of the facts as true. Carver v. Bunch, 946 F.3d 451, 455 (6th Cir. 1992). Nevertheless, "[t]he court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that the movant has demonstrated the absence of a genuine issue of material fact." Id. Having undertaken the requisite review, the Court finds that Defendants have

---

[1] The Court notes that at the end of both the "Concise Statement of Facts" and the Memorandum, Plaintiff has signed a statement wherein he "swears that the foregoing statement are full and accurate statements about each and every allegation about the matters set forth herein[.]" (Docket Nos. 21at 6 & 21-1 at 6). This fails to comply with the Local Rules which, in part, provide:

> **Concise Statement of Facts.** In order to assist the Court in ascertaining whether there are any material facts in dispute, any motion for summary judgment pursuant to Rule 56 . . . shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial. Each fact shall be set forth in a separate, numbered paragraph. Each fact shall be supported by a specific citation to the record. After each paragraph, the work 'response' shall be inserted and a blank space shall be provided reasonably calculated to enable the non-moving party to respond to the assertion that the fact is undisputed.

L.R. 56.01(b).

carried their burden and are entitled to summary judgment.[2]

In the Complaint, Plaintiff alleges "disparate treatment," and sets forth allegations about his being placed in solitary confinement, about not being allowed to work as a trustee, about an allergy to onions, and about not being "allowed to attend Sunday church services at the Maury County Jail[.]" (Docket No. 1 at 3). Though not cited, presumably Plaintiff's Complaint is based upon 42 U.S.C. § 1983, which provides a cause of action for one subjected to the deprivation of a federal right by persons acting under color of state law. So construed, however, Plaintiff has failed to set forth a triable claim.

"'[I]t is certainly preferable that plaintiff [] explicitly state whether a defendant is sued in his or her individual capacity,'" Mitchell v. Chapman, 343 F.3d 811, 822 (6th Cir. 2003) (*en banc*, citation omitted). Plaintiff's Complaint in this case makes no such designation. Nevertheless, to the extent Defendants are sued in their official capacity, the suit is treated as a suit against the municipality, Hafer v. Melo, 502 U.S. 21, 25 (1991), and to prevail Plaintiff must show that his "constitutional injury result[ed] from a policy or custom 'made by those whose edicts or acts may fairly be said to represent official policy.'" Saieg v. City of Dearborn, 641 F.3d 727, 742 (6th Cir. 2011) (quoting, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694–95 (1978)).

Plaintiff identifies no policy or custom that allegedly led to the deprivation of any of his constitutional rights, and, in fact, admits he has "no knowledge of the Maury County Jail procedures." (Docket No. 21 at 3). As such, the Maury County Sheriff's Department and the individual Defendants are entitled to summary judgment insofar as they are being sued in their

---

[2] Notwithstanding Plaintiff's failure to comply with Fed. R. Civ. P. 56 and the Local Rules, the Court has considered his filings, including his alleged version of events, but still finds that Defendants are entitled to Summary Judgment.

official capacity.

To the extent that the individual Defendants are sued in their individual capacity, they have pleaded that they are entitled to qualified immunity. (Docket No. 11 at 6). Qualified immunity is an affirmative defense which shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The Sixth Circuit has reviewed the approach courts should take in considering the qualified immunity defense:

> In deciding claims of qualified immunity, [a court] must determine: (1) whether the facts alleged or shown by the plaintiffs make out a violation of federal statutory or constitutional right; and (2) whether that right was "clearly established" at the time of the defendants' alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 815–16, 172 L.Ed.2d 565 (2009). Although it is "often appropriate" to resolve these questions sequentially, it is no longer mandatory that the court do so. Id. at 818; see also Waeschle v. Dragovic, 576 F.3d 539, 543–44 (6th Cir. 2009). For a right to be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Once raised as a defense, plaintiffs bear the burden of demonstrating that the defendants are not entitled to qualified immunity. Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).

Roth v. Guzman, 650 F.3d 603, 609 (6th Cir. 2011). In this case, Plaintiff has failed to show that he was deprived of a federal statutory or constitutional right.

Plaintiff's overriding Complaint is that he was kept in solitary confinement and not allowed to mingle with other prisoners, and, as a consequence, was not allowed to work either inside or outside the jail. In response, Defendants assert that Plaintiff was held in protective custody because he was a former Maury County Deputy Sheriff being housed in the Maury County Jail.

Jail officials are afforded "wide-ranging deference in the adoption and execution of policies

4

and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 546-47 (1979). "Such deference does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that the Court not 'freely substitute [its] judgment for that of officials who have made a considered choice.'" Conley v. Warden, 2008 WL 4657084 at *5 (S.D. Ohio 2008) (quoting, Whitley v. Albers, 475 U.S. 312, 322 (1986)). "Nevertheless, '[t]he Court should defer to the judgment of prison officials on plaintiff's protective custody placement in the absence of substantial evidence showing such deference is not warranted." Id.; see, Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir.1995) ("prison officials have legitimate penological interests in administrative segregation, and they must be given 'wide-ranging deference'" in order to maintain institutional security).

Plaintiff has failed to present any evidence, let alone substantial evidence, that Defendants acted improperly by placing Plaintiff in protective custody given his status as a former deputy. Plaintiff's contention that he "was never in danger as his personality is such that he makes friends easily," (Docket No. 21 at 1) is conclusory, and says nothing about how other inmates may have reacted to being housed with a former officer. His assertion that, as a deputy, he never entered the jail (save for the sallyport), is of no moment because, regardless of whether his duties required him to go into the jail, he was a former police officer, and it is not uncommon for former law officer to be placed in protective custody upon confinement. See, Anderson, 45 F.3d at 1315 (noting county jail's policy of placing former police and correctional officers into administrative segregation); United States v. Zuni, 506 F.Supp.2d 663, 684 (D.N.M. 2007) (noting that it was "very likely" that defendant would have to serve his sentence in solitary confinement "because of his background as a former law enforcement officer"); Valentin v. Murphy, 95 F.Supp.2d 99, 102 (D. Conn. 2000)

5

("Having determined initially that [defendant] would be at risk in the general state prison population, based on his status as an ex-law enforcement officer, the defendants were not obliged to revisit that decision in the absence of information that the risk had dissipated").

Plaintiff also complains about not being granted trustee status. However, that too was due to his status as a former deputy. Regardless, Plaintiff "has no constitutional right to inmate trustee status." Coffee-Smith v. Shipley, 65 Fed. Appx. 912, 913 (4th Cir. 2003). In fact, "[a]ppointment and removal of inmates as trustees is up to the 'sound discretion of jail administrators,'" Vincent v. Melton, 2010 WL 3420333 at * 21 (M.D. Tenn. 2010), something which Plaintiff has not shown to have been abused because, at the time he entered the jail, he was not only a former police officer, but he also had charges pending in other counties. Additionally, Plaintiff's contention that his eight years of experience installing and repairing video and audio equipment for Wal-Mart could have been put to good use by the Sheriff's Department is irrelevant since the discretion in trustee placement lies with the jail administrator.

Plaintiff further complains that, although he is a long-standing member of the Church of Christ, he "not allowed to attend church services at the Maury County Jail." (Docket No. 21 at 4). In yet another declaration in support of Defendants' Motion for Summary Judgment, Wagonschutz states:

> While in protective custody, inmates can attend religious services only when there are enough volunteers to provide them. Typically, the volunteers provide pods holding more inmates in order to reach a larger group. If Plaintiff could not attend religious services in protected custody, it was not because he was not permitted. It because there were not enough volunteers to lead the services.

(Docket No. 19 at 2). Again, Plaintiff has proffered no competent evidence to rebut these assertions.

"Inmates clearly retain protections afforded by the First Amendment . . . including its

directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citation omitted).  Further, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") "which expands the First Amendment protections accorded prisoners with respect to their religious beliefs," Hayes v. Tennessee, 424 Fed. Appx. 546, 553 (6th Cir. 2011), provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2).  However, courts should "not read RLUIPA to elevate accommodation of religious observances over an institution's need to maintain order and safety," and "should apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" Cutter v. Wilkinson, 544 U.S. 709, 722 (2005).

Where an inmate's inability to attend religious services stems not from a policy which prohibits congregating, "but by the dearth of clergy and authorized volunteers," there is, absent a substantial burden, no RLUIPA violation, Baranowski v. Hart, 468 F.3d 112, 125 (5th Cir. 2007), or violation of the Free Exercise Clause of the First Amendment, Anderson v. Harron, 2009 WL 2058863 at **3-4 (D.N.J. July 7, 2009). In any event, "[a]n inmate asserting a claim under the RLUIPA must first produce *prima facie* evidence demonstrating that his religious exercise was substantially burdened," which requires a showing that "the action forced [the inmate] to choose between following the precepts of [his] religion and forfeiting benefits, . . . or when the action in question placed 'substantial pressure on an adherent to modify his behavior and to violate his

7

beliefs." Hayes, 424 Fed. Appx. at 555-556 (citation omitted). Plaintiff has made absolutely no showing of a substantial burden in this case. See, Anderson, 2009 WL 2058863 at *5 (There is no substantial burden where a "jail prohibits communal prayer services only in the absence of a religious leader," and where "Plaintiff may pray alone or with other members of his pod[.]" ).

Finally, there remains the matter of "the onions".[3] The factual basis for this claim is set forth by Plaintiff as follows:

> The Plaintiff had difficulty eating as he is allergic to onions. For a very long time his food contained onions at every meal except at breakfast. After he was taken for medical attention twice, the onions were deleted from his diet. Then a short time later, the kitchen staff reinstated the onions in the Plaintiff's food. After his attorney requested the deletion of onions from his diet by one of the very courteous jailers, he has finally received no more onions in his food.

(Docket No. 21-1 at 2). Plaintiff argues that Defendants' actions in relation to the onion episodes were a "clearly blatant violation" of his Eighth Amendment rights. (Id. at 5).

The Eighth Amendment's cruel and unusual punishment clause prohibits inhumane living conditions and the deliberate indifference to a serious medical need. No matter how couched, however, to prevail on an Eighth Amendment claim, Plaintiff must establish both that Defendants were objectively aware of the situation and that, subjectively, their deliberate indifference either denied Plaintiff a necessity of civilized human existence or appropriate medical care. See, Barker

---

[3] In his Complaint, Plaintiff also mentions that he was only "allowed to take a twenty minute shower once a day and allowed to shave once a week." (Docket No. 1 at 2 ¶ 5). This is a totally underdeveloped claim and, in any event, fails on the merits. See, Richmond v. Settles, 2011 WL 6005197 at * 6 (6th Cir. Dec. 2, 2011) ("prisoners in administrative segregation" must "be afforded at least one shower per week as a constitutional minimum"); O'Brien v. Kurtz, 1986 WL 11259 at *2 (E.D. Pa. Oct. 8, 1986) ("no claim stated where inmate permitted to shave and shower once a week").

Plaintiff also claims that he filed a grievance once which was not acted upon. This claim, too, is underdeveloped and, besides, prisoners have no constitutional right to grievance procedures. See, Bingham v. Thomas, 654 F.3d 1171, 1177 (11th Cir. 2011) (collecting cases).

v. Goodrich, 649 F.3d 428, 434 (6th Cir. 2011) (a condition of confinement claim requires a showing of deliberate indifference and knowledge of the risk); Alspaugh v. McConnell, 643 F.3d 162, 169 (6th Cir. 2011) (citations omitted) (a denial of medical care has an objective component which "requires a plaintiff to show that 'the medical need at issue is sufficiently serious'" and a subjective component which "requires a showing that 'prison officials have a sufficiently culpable state of mind in denying medical care'").

Plaintiff's Eighth Amendment onion claim fails because he has not established either the objective or subjective component of such a claim. Indeed, Plaintiff does not even show who knew what and when in relation to his alleged allergy to onions, or that any of the Defendants were directly or indirectly responsible for introducing onions into his diet.

Based on the foregoing, the Court will enter an Order granting Defendants' Motion for Summary Judgment, and denying as moot Plaintiff's "Motion to Place the Plaintiff in a Jail Where the Plaintiff can Work."

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE